Richmond, P. J.,
delivered the opinion of the court.
Plaintiff in error, David Heller, was at the January term, 1890, of the district court for Arapahoe county, indicted by the grand jury. The indictment presented contained four counts. The first count charged him with embezzlement, as the agent of Caroline Spindler, of a promissory note of the value of $1,200, the property of said Caroline Spindler. The second count charged him with embezzlement as bailee of the same note. The third count charged him with obtaining the possession by false pretenses of the same note, of the value of $1,200. The fourth count charged him with the larceny of $1,200, the property of Caroline Spindler, received by him as bailee of said Caroline Spindler.
A nolle prosequi was entered as to the third count.
At the April term, A. D. 1890, of said district court, plaintiff was formally arraigned and pleaded not guilty. Final trial was had at the January term, 1891, and resulted in a general verdict of guilty.
The value of the property was found to be $1,000.
Exceptions to the verdict were entered and motion for a new trial made.
February, 1891, motion for the discharge of the defendant was interposed on the ground that the cause had been continued for a period of two terms at the instance of the people, and that by virtue of the provisions of section 1616 of the General Statutes of this state, defendant was entitled to his liberty. This motion was overruled as well as the motion for a new trial.
The motion for a new trial was based upon the alleged errors of the court in the admission and rejection of testi *461 mony, misconduct of the jury, and new evidence, alleged to have been discovered since the trial. Motion for a new trial was denied and judgment rendered. Motion interposed in arrest of judgment, overruled.
Thereupon the court entered judgment upon the verdict, on the first count of the indictment, sentencing the defendant to one year in the penitentiary. To reverse this judgment defendant prosecutes this writ of error, and in support thereof assigns seventy alleged errors. These can properly be aggregated under five heads:
1. Misjoinder of counts in the indictment.
2. Error in the form of the verdict in this, that the verdict was general on three counts in the indictment, and should have been special, and designated the count upon which the verdict was based.
3. The constitutionality of the statute defining the crime enumerated in the first count of the indictment.
4. Errors occurring at the trial, to wit, errors of the court in the admission of testimony over the objection of the defendant, in the rejection of testimony and in the instructions to the jury.
5. Error of the court in overruling motion for a new trial.
It is insisted that the indictment is defective in this, that it contained counts charging offenses against the law wherein the character of the punishment attached to the offense was different, that is, that for the offense charged in the first, second and fourth counts, the punishment was confinement in the penitentiary for not less then one nor more than ten years, while the punishment for the offense charged in the third count is a fine not exceeding $1,000 and imprisonment in the penitentiary not exceeding one year and a return of the property fraudulently obtained.
It is admitted by counsel for defendant that different counts for similar offenses may properly appear in the same indictment, and the test by which to determine whether they can be united is the character of the punishment attached to each offense charged. It is also admitted that the punish *462 ment for the offenses charged in the first, second and fourth count is the same. This admission, coupled with the fact that the prosecution entered a nolle prosequi as to the third count in the indictment at a former term of the court, and that no testimony was offered under said count, nor was it referred to, either by the court or counsel, during the progress of the last trial now under consideration, disposes of this contention.
True, the court in its instructions did not call the attention of the jury to the fact that the third count had been nollied and judgment rendered thereon for defendant; still a careful reading of the instructions will disclose the fact to be that they were addressed particularly to the first count in the indictment, and the counsel admit this in their brief in the following language: “ As the coxirt in its instructions directs the attention of the jury more particularly to the offense charged in the first count of the indictment and the sentence and judgment of the court is upon that count.” Being no part of the indictment at the trial now under review, we are .unable to conceive how it could have been considered by the jury.
The next point to which our attention is called is the fact that the indictment is drawn under an act of the legislature entitled An Act to amend chapter 24 of the General Laws of Colorado, entitled “ Criminal Code.”
It is insisted that at the time this statute was enacted there was no act of the legislatui'e entitled “ Criminal Code,” that the only general act known to our statute was an act relating to criminal offenses entitled An Act concerning “ Criminal Jurisprudence,” and that the title of an act is by the constitution made an indispensable part of every enactment by the legislature. And that the compiler of laws cannot be delegated with authority to change the title of a statute. The act referred to — page 69, Session Laws of 1881 — is entitled An Act to amend chapter 24 of the General Laws of the State of Colorado, entitled “ Criminal Code.” The second section of the act reads as follows:
*463 “If any clerk, apprentice or servant, whether bound or hired, or any agent, clerk, or employee, to whom any money, bank bill, note, goods or chattels, shall be intrusted or delivered by any other person for the benefit or use of his or her master or mistress, principal or employer, or come into the hands of such clerk, apprentice, servant, agent or employee, by virtue of his or her employment or confidential relation to his or her master, mistress, principal or employer, shall withdraw himself or herself from his or her master, mistress, principal or employer, of go away with the said money, bank bill, note, goods or chattels, or any part thereof, with the intent to steal the same, or defraud his or her master, mistress, principal or employer thereof, contrary to the trust and confidence in him or her reposed by his or her said master, mistress, principal or employer, shall embezzle the said money, bank bill, note, goods or chattels, or any part thereof, or otherwise convert the same to his or her own use with .like purpose to steal the same; every such person so offending shall be deemed guilty of larceny and be punished accordingly.”
The laws of 1877 were compiled by the secretary of state under authority conferred upon him by the legislative assembly of this state, in which it was provided that the secretary of state should prepare or cause to be prepared and printed all the general laws passed by the general assembly now in force and not repealed by this general assembly, and to arrange the same in a concise and compact form so as to have all law upon each subject arranged together under the same title as far as practicable, and that the laws shall be divided by appropriate titles with the date of approval printed at the end of each act.
By virtue of the pi’ovisions of this act the secretary of state compiled the laws relating to crime under the head of “ Criminal Code.” Chapter 23 of the Revised Statutes, 1868, is entitled “ Criminal Code,” and embraced, or should have, under its head every provision of law pertaining to criminal jurisprudence. This title was continued in the *464 compilation made by the secretary of state under the act above referred to. And chapter 22 of the territorial act 1868 is embraced in chapter 24 of the Acts of 1877. By the constitution all territorial laws not inconsistent with its provisions were continued in full force. Vide Schedule, § 1. The act of 1881, then entitled An Act to amend chapter 24 of the general laws of the state of Colorado, entitled “ Criminal Code,” in our judgment fully complies with article 5, section 21, of the constitution, both in letter and spirit. And we are further of the opinion that the caption “ Criminal Code ” is broad enough to embrace every offense against the law that can be classified as a misdemeanor or felony as well as criminal pleading and practice.
In Clare v. The People, 9 Colo. 122, it is said that the provision of the constitution referred to had, among other purposes, the purpose to prevent imposition upon the legislature and the people through the pernicious practice of dealing in bills, the subject of which the titles give no intimation, and that this constitutional inhibition must receive a reasonable interpretation, and whenever a matter contained in the statute may fairly be considered germane to the subject expressed by the title, it is sufficient. Dallas v. Redman, 10 Colo. 300; Edwards v. D. & R. G. R. Co., 13 Colo. 59.
It is further contended that the act of 1881 was an act to amend chapter 24, and under such title the legislature was inhibited by the constitution from creating a further and additional crime then unknown to the statutes. In other words, that the act of 1881 should have been more explicit and should have provided, not only for the repeal of the section, but should have provided bjr title for the creation of another and different offense not then designated in chapter 24. It will be observed that the act of 1881 deals with various sections of chapter 24, and provides that the foregoing shall stand in lieu of said section 67.
We are unable to appreciate the force of the argument of counsel upon this point. Certainly the act of 1881 cannot *465 be classified as anything more than an amendment of various sections of chapter 24.
The constitution of this state, by section 23, article 5, provides that no law shall be revived or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length.
The legislature, therefore, in amending the various sections enumerated in the act of 1881, followed strictly this provision of the constitution and extended the operation of section 67, by making it applicable to an agent or employee. The mere fact that the legislature used the word “ repealed ” does not destroy the effect, because of the language preceding and following, that is, an act to amend chapter 24 of the criminal code, and that section 67 thereof shall read as follows and the section enacted should stand in lieu thereof.
We know of no provision of the constitution that inhibits the legislature from extending the operation of the section of the statute thus amended. On the contrary, we are inclined to think that the language of section 23, article 5, clearly contemplated that such power should be vested in the legislature, and that the provisions of a statute or section thereof may be extended in its operations by amendment to cover other persons or transactions, providing such persons and transactions embraced within the extension by way of amendment come within the purview of or are germane to the purposes and objects of the statute.
This section of the constitution has received the considera- , tion of the supreme court of this state in the case of Edwards v. D. & R. C. R. Co., supra, in which it was held that if the subject considered in the body of the statute be germane to the general subject expressed in the title, the constitution is in this respect complied with. And in that case the court took occasion to say: The statute challenged as void by virtue of conflict with the constitutional provision now under -consideration, in effect adds a section to the chapter men- . tioned by its title. It is properly termed an amendment, *466 because, as we have seen, it deals with a matter germane to the general subject of the chapter. Yet it in no way changes any section or other specific portion of the act relating to the formation of domestic corporations for pecuniary gain. It introduces a requirement wholly new to the act, in so far as it pertains to this class of corporations. It is complete- in itself, covering all there is in the chapter as amended. * * *• It enacts and publishes at length so much of the act as it treats of. It can result in no ambiguity or uncertainty, nor could any legislator have been misled or deceived as to its purpose and effect. See Callahan v. Jennings, 16 Colo. 472.
The manner of thus amending the chapter by enacting a section in lieu of a section repealed, is approved by the opinion in that case. The act refers to the criminal code, it repeals certain sections of the criminal code, and it extends the operation of section 67 by making an agent or employee amenable to law as a clerk, apprentice or servant was before.
The title of the original act or chapter was thus fully and correctly recited, and the specific sections as amended were re-enacted at length. They contained no object not embraced in the title of the original act, and we think that the title of that act in form is in substantial accordance with the clause of the constitution which defines the legislative power on the subject to which the act relates, and indicates the purpose to be attained by the legislature.
In the case of The People v. Mahaney, 13 Mich. 481, Judge Cooley, in delivering the opinion, comments upon this constitutional provision as follows: “ This constitutional provision must receive a reasonable construction, with a view to give i.t effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was *467 only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.”
In Underwood v. McDuffee, 15 Mich. 361, Campbell, J., in rendering the opinion, commenting upon the same section, says: “ It is also urged that the statute creating the existing system of references is invalid as not in any proper sense an amendment of the prior statutes, although purporting to be such. The constitution declares that no law shall be amended or altered by reference to its title only, but that the sections altered or amended ‘ shall be re-enacted and published at length.’ The law in question was designed to remodel the : entire system of references; and in lieu of several sections of the former statutes, a series of new sections was adopted, each in the room of an old one. The objection pointed out is, ■that some of the new sections bear no resemblance to those superseded, but relate to a different class of details. We can see no illegality in this. There is no principle which can prevent the legislature from substituting any provision they please for any other provision, whether cognate or not, if the new section is not foreign to the subject indicated by the title of the law in which it is inserted.” * *. *
These two cases are followed and approved in Harrington v. Wands, 23 Mich. 385 ; Ripley v. Evans, 87 Mich. 217.
This by no means exhausts the authorities which might be referred to, but we deem it unnecessary to extend the opinion upon this point as we have no doubt of the constitutionality of the amendment.
It is next insisted that the first count in the indictment does not state any offense under the statute; With this we are compelled to disagree.
The first count in the indictment in substance charged *468 that David Heller, defendant, was the financial agent of Caroline Spindler, for the purpose, among other things, of borrowr ing and lending money, and that as such financial agent he had the general charge and management of the financial affairs of Caroline Spindler. That on the first of October, 1889, the said defendant, Heller, then being the general financial agent of said Caroline Spindler, did by virtue of his said agency and the confidential relation existing between them, receive and take into his charge, custody and possession, and was intrusted with, by the said Caroline Spindler, one promissory note * * * of the value of $1,200 for the purpose of negotiating a sale of the same for the sole use and benefit of said Caroline Spindler; that the said David Heller then and there feloniously and fraudulently did embezzle, steal, take and carry away said note with intent then and there feloniously to steal the same and did unlawfully and feloniously convert the note to his own use with like intent to steal the same.
The foregoing is not a literal copy of the count but, as before said, states the substance and is enough, for the purpose of illustrating our views.
The statute provides that if any agent to whom any money, bank bill, note, goods or chattels shall be intrusted or delivered by any other person, or into whose hands such bank bill, note, goods or chattels shall come by virtue of his or her employment or confidential relation to his or her principal or employer shall withdraw himself from his principal or employer, or go away with the said note or any part thereof, with intent to steal the same contrary to the trust and confidence in him or her reposed, or shall embezzle the said note or any part thereof, or otherwise convert the same to his or her own use with like purpose to steal the same, every such person so offending shall be deemed guilty of larceny and punished accordingly.
By reading the section from which the above is extracted . it will be observed that a clerk, apprentice, agent or employee are enumerated as the individuals who are amenable to this law. And the parties who may be defrauded or against *469 whom the crime may he committed, are master, mistress, principal or employer, and that the mode hy which the crime may be committed against these individuals is by withdrawing from the master or mistress, principal or employer, or going away with the property with intent to steal the same or with intent to defraud the master, mistress, principal or employer contrary to the trust and confidence reposed in such clerk, apprentice, agent, or employee, or who shall in any wise convert such property with like purpose of stealing the same shall be guilty of larceny.
By the first count in the indictment it clearly appears that the relation of agent and principal is distinctly set out. The fact that the note was intrusted to the care of the defendant is alleged, and the purpose for which he was intrusted with the property is also therein embraced. And this is followed-with the further allegation that he converted the said note with intent to steal the same.
In the case of The People v. Noyce, 86 Cal. 893, it was held ■ that where the facts constituting the crime of embezzlement are fully stated in the information, such information is sufficient, although the accused is not called in the information bailee, trustee, or agent, or formally put into any of the classes named in the sections of the Code which define embezzlement. People v. Johnson, 71 Cal. 389.
The State v. Combs, 47 Kans. 136, supports us in the conclusion above announced. In the course of the opinion the court says: “ Although the charge does not fully state the facts and circumstances of the bailment, it fairly indicates the character of the same. It shows who placed the money in’ his hands, the purpose for which it was intrusted to him, and wherein he has failed to carry out the trust. It states that the money was intrusted to him for safe custody, but, instead of safely keeping the money, he embezzled and converted the same to his own use, and did feloniously steal and carry it away.” In- this case it is also held that the sufficiency of the information should have been raised by motion to quash - and that it was too late for the defendant to avail himself of' *470 the technical error in form, or mere imperfection in the statement of the complaint.
We see no defect in this count in the indictment, but on, the contrary feel constrained to say that the count indicates' that the pleader exercised unusual care in drawing the same in order to bring the defendant within the provisions of the: statute. And in this connection we may pass upon the fur-, ther contention that the note described in the indictment does not correspond.in words and figures with the.note introduced in evidence as the one delivered by the principal, ■ Caroline Spindler, to defendant, Heller. The indictment recites .why this discrepancy exists. The note was not in the possession of the grand jury, or in the possession of any one connected with the prosecution, so that the exact de-. scription could be given. This however is not fatal because. the description of the note was not necessary. It would have been sufficient to have alleged a certain promissory note, or a certain note of the value of $1,200.
The State v. Combs, supra, was a case wherein a party had. been charged with the embezzlement of $530 current money • of the United States, consisting of national bills commonly called greenbacks, national bank bills, silver certificates and gold certificates, and it was held that this description, coupled with an allegation of inability to give the denomination and., number of each, or a better description of the money embezzled and stolen, was sufficient, and especially so when the . Objection was not made until after verdict had been returned. • State v. Henry, 24 Kans. 457; State v. McAnulty, 26 Kans. 533.
: Thus far we think that we have disposed of the grounds urged upon our attention by the original brief in this case. We shall now proceed to the examination of such errors as we deem worthy of consideration relied upon in the supplemental brief.
' The first point raised is that failure of the proper officers of the court to furnish the defendant with a list of the jurors and witnesses at the January term, 1891, is a reversible error. *471 We cannot agree with this view. The provisions of the-statute are that previous to the arraignment of a prisoner for murder or other felonious crime, he shall he furnished with a copy. of the indictment and a list of the jurors and witnesses, and the record discloses the fact to be that this provision of the law was fulfilled.. That subsequently at the' September term defendant was tried, and again at the succeeding January term. We hardly thinlr that the statute-' can be so elastic as to be construed to impose upon the prose-' cuting officer the duty of furnishing the names of the wit-' nesses and a list of the jurors, together with a copy of the-indictment at any other time than previous to arraignment.' The copy of the indictment and the list of the witnesses were all within the control and knowledge of the defendant, and we assume that at the succeeding term, if he had desired, he could have obtained a list of the jurors. At any rate we feel that the duty imposed by the statute was performed.
The next point is the delay in bringing the defendant to trial. It is insisted that under the provisions of the habeas corpus act, Mills Ann. Stats. §2118, vol. 1, p. 1295, the' defendant was entitled to be discharged. The provision of: that section is that, “ If any person shall be committed for a criminal or supposed criminal matter and not be admitted-' to bail, and shall not be tried on or before the second term of the court having jurisdiction of the offense, the prisoner ■ shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner. If such court at-the second term shall be satisfied that the due exertions have been made’to procure the evidence for and on behalf of the people, and that there are reasonable grounds to believe that' such evidence may be procured at the third term, they shall ■ have power to continue such case until the third term. If ■ any such prisoner shall have been admitted to bail for a crime - other than a capital offense, the court may continue the trial of said cause to a third term, if it shall appear by oath or affirmation that the witnesses for the people of the state *472 are absent, such witnesses being mentioned by name, and -the court shown wherein their testimony is material.”
The indictment in this case was presented at the January term, 1890, and was tried at the September term of the same year. The result of that trial is not disclosed by the record, but we assume that there was a mistrial. At the succeeding January term, 1891, the defendant was put upon trial again without objection, and the record does not disclose whether or not at the previous trial any objections were interposed or that this statute was invoked. We do not think that the-defendant is in a position, under these circumstances, to insist upon a reversal of this judgment under the provisions of this section, because the court after the trial and upon a motion in arrest of judgment refused to discharge him.
This brings us to the consideration of the question of misconduct of counsel for the state. We admit that the remarks incorporated into the record as having been uttered by the prosecuting attorney were highly improper and unwarranted, but in the face of the fact that the record shows that objections were interposed by counsel for defendant, and-that those objections were sustained and the remarks eliminated, and counsel cautioned by the court to refrain from • further comments of that nature, that the defendant secured through the court a correction of this misconduct, and we are warranted in assuming that in view of the action of the court, that the jury were not influenced or prejudiced against - the defendant by the course pursued by counsel for the prosecution.
We do not feel that we would be justified in further considering in detail the errors assigned. We have -carefully read the record and considered the instructions and reviewed a majority, if not all, of the authorities cited by counsel pro and con, and have reached the conclusion that there is no error in the record which would warrant us in reversing the judgment..
Therefore the judgment is affirmed.

Affirmed.