STATE, RESPONDENT, *v.* DUNCAN, APPELLANT.

(No. 5,774.)

(Submitted October 22, 1925. Decided November 5, 1925.)

[240 Pac. 978.]

*Intoxicating Liquors—Search-warrants—Automobiles—Statutes —Title—Sufficiency—Constitution.*

Search-warrants—Search Without Warrant—When Authorized.
1. To authorizbe an officer to make a search without a warrant he must have probable cause to believe that the law is being violated in his presence.

Intoxicating Liquor—Automobiles—Search Without Warrant—Evidence— Sufficiency.
2. Evidence in a prosecution for illegally transporting and possessing intoxicating liquor reviewed and *held* sufficient to warrant the officer in making a search of defendant's automobile and seizing a quantity of liquor without a warrant, under the above rule.

Same—Statute—Title—Sufficiency—Constitution.
3. Chapter 116, Laws of 1923, amending sections 11071, 11075 and 11079, Revised Codes of 1921, and increasing the punishment for the unlawful transportation or possession of intoxicating liquor, *held* not open to the attack that it contravenes the provisions of section 23, Article V, of the Constitution, in that the purpose to increase the punishment is not indicated in its title.

Statutes—Title—When Sufficient to Withstand Attack on Constitutional Ground.
4. Where the title of an Act fairly indicates its general subject and does not tend to mislead the members of the legislature or the peo-

---

3. Sufficiency of title of statute, see notes in 64 Am. St. Rep. 70. Construction of constitutional provisions relating to titles of statutes, see notes in 1 Ann. Cas. 584; Ann. Cas. 1915A, 79.

Validity of statute providing penalty or punishment not mentioned in title, see note in Ann. Cas. 1912D, 157.

[74 Mont. 428.]

ple, it sufficiently meets the requirement of section 23, Article V, of the Constitution.

Same—Title to Act Amending Section of Code—When Sufficient.

5. Where the title of an amendatory Act refers to the number of the section of the Code to be amended and indicates its subject matter with sufficient particularity to identify it to a reasonable degree of certainty it is sufficient to withstand constitutional attack based on section 23, Article V, of the Constitution.

Same—Title to Act Amending Section of Code by Reference to Number of Sections Only.

6. *Quaere:* Is the title to an amendatory Act sufficient if it refers by number only to the section of the Code to be amended?

Same—Title—Selection a Matter of Legislative Control—When Title Held Sufficient.

7. The selection of the title to an Act is a matter of legislative control in the first instance, and while in a given instance a better title might have been chosen, the Act will not be declared unconstitutional unless the insufficiency of the title adopted is clear and unmistakable.

---

Constitutional Law, 12 C. J., sec. 222, p. 797, n. 35.
Criminal Law, 16 C. J., sec. 1110, p. 571, n. 93.
Intoxicating Liquors, 33 C. J., sec. 376, p. 679, n. 44 New.
Searches and Seizures, 35 Cyc., p. 1266, n. 12.
Statutes, 36 Cyc., p. 1017, n. 78; p. 1018, n. 79, 81; p. 1020, n. 85; p. 1028, n. 24; p. 1030, n. 30; p. 1036, n. 54.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

T. O. DUNCAN was convicted of unlawful transportation and possession of intoxicating liquor, and he appeals. Affirmed.

*Mr. J. P. Donnelly,* for Appellant, submitted a brief and argued the cause orally.

By the title of Chapter 116, Laws of 1923, we are apprised that the legislature intended to amend the laws relating to the manufacture, sale and use of intoxicating liquors only, whereas in the body of the amendatory Act they presume to deal with the possession and transportation of intoxicating liquor, as well as many other features of the Prohibition Law. This is in violation of Article V, section 23 of the state Constitution. Hence section 2 of the Act, in so far as it pur-

---

7. Insufficiency of title of statute as affecting validity, see note in Ann. Cas. 1916D, 28. See, also, 25 R. C. L. 849.

ports to increase the penalty for possessing and transporting intoxicating liquor, is unconstitutional and void; the subject not having been expressed, clearly or otherwise, in the title. (*State* v. *Cunningham*, 35 Mont. 547, 90 Pac. 755; *State ex rel. Holliday* v. *O'Leary*, 43 Mont. 157, 115 Pac. 204.) The rule "*expressio unius est exclusio alterius*" is particularly applicable here.

*Mr. L. A. Foot,* Attorney General, and *Mr. E. E. Collins,* Special Assistant Attorney General, submitted a brief.

*Mr. A. H. Angstman,* Assistant Attorney General, argued the cause orally.

It is well settled in this state that the legislature need not mention in the title of the Act that it is going to change or fix penalties in the body of the Act, for penalties are but ends and means necessary and convenient for the accomplishment of the general object. (*State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441; *Snook* v. *Clark,* 20 Mont. 230, 50 Pac. 718; *In re Terrett,* 34 Mont. 325, 86 Pac. 266.)

Chapter 116 is a bill to revise, by amendment, the law on a particular subject, and this court has settled the rule to be that "a bill the purpose of which is to revise by amendment the law on a particular subject falls within the exception of section 23, Article V, of the state Constitution." (*State ex rel. Cotter* v. *District Court,* 49 Mont. 146, 140 Pac. 732; *In re Ryan,* 20 Mont. 64, 50 Pac. 129; *State* v. *Long,* 21 Mont. 26, 52 Pac. 649.)

It was not necessary for the legislature to mention specifically in the title of the bill the several sections proposed to be amended or repealed. The title is sufficient if it fairly indicates the general subject of the Act, is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the legislature or the public. (*Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462; *State* v. *Anaconda C. Min. Co.,* 23 Mont. 498, 59 Pac. 854;

*State* v. *McKinney,* 29 Mont. 375, 1 Ann. Cas. 597, 74 Pac. 1095; *State* v. *Ross,* 38 Mont. 319, 99 Pac. 1056; *State* v. *Mitchell,* 17 Mont. 67, 42 Pac. 100.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 28, 1925, the sheriff of Hill county, without a warrant, searched an automobile belonging to and in the possession of T. O. Duncan, and took therefrom twenty-four cases of Canadian whisky and beer. On March 30 an information was filed which charged Duncan with the unlawful transportation and possession of intoxicating liquor. A motion was made to suppress the evidence obtained by the search, but the motion was overruled and the evidence was admitted at the trial. Duncan was found guilty as charged and his punishment was fixed at a fine of $400 and imprisonment in the county jail for four months. He has appealed from the judgment and presents two contentions: (a) That the court erred in refusing to suppress the evidence, and (b) that the punishment imposed upon him is not authorized by law.

1. It is the rule in this state that whenever an officer dis-
[1] covers that the prohibitory liquor laws are being violated in his presence, it is not only his privilege, but his duty, to seize the liquors and arrest the offender (secs. 11073, 11106, Rev. Codes; *State ex rel. Brown* v. *District Court,* 72 Mont. 213, 232 Pac. 201) ; but to authorize a search without a warrant for that purpose, the officer must have probable cause to believe that the law is being violated in his presence (*State ex rel. Neville* v. *Mullen,* 63 Mont. 50, 207 Pac. 634.)

The facts and circumstances under which the sheriff under-
[2] took to justify his search of the automobile in question are substantially the following: For more than a year Duncan had been apparently without any legitimate means of support, although he maintained a home near Havre and supported a family. His general reputation was that he was engaged

in the unlawful transportation, possession and sale of intoxicating liquors. He had complained to the sheriff in the spring of 1924 that he had been held up and robbed on the road north of Havre, and upon investigation the sheriff ascertained that the robbery occurred while Duncan was transporting liquor from Canada. An officer or agent acting under the sheriff reported that he had purchased liquor from Duncan in July, 1924, and that Duncan was doing a considerable business handling intoxicating liquors. In September, 1924, in the presence of the sheriff, the county attorney accused Duncan of transporting and selling intoxicating liquors, which charge Duncan did not deny but promised to quit the business and move away. About January 1, 1925, a federal officer reported to the sheriff that Duncan then had a considerable quantity of intoxicating liquors stored at his premises. During the week immediately preceding March 28, the sheriff and his deputy visited the premises occupied by Duncan and observed several automobiles come to and depart from the place, saw occupants of the Duncan home throw away numerous quart bottles, and saw a person, whom they believed to be Duncan, go from the house into the brush near by and return with an armload of quart bottles. A week prior to March 28 the sheriff was informed that Duncan had gone to Sweetgrass, on the international boundary line, for a load of liquor and tried to intercept him but failed. On March 27 the sheriff was informed by his deputy that Duncan had gone to Sweetgrass for a load of intoxicating liquor, that he was driving his Dodge car, and had left Havre about 4 P. M. of that day. The sheriff knew what time would be required to make the trip to Sweetgrass and return, and concluded that Duncan would return on the evening of March 28. About 8 P. M. of March 28, the sheriff and his deputy stationed themselves near the Duncan premises, and about an hour later Duncan drove into his yard from the main highway in his Dodge car, which had the curtains, except one front curtain, closed; the springs indicated that the

car was loaded heavily. Duncan and a young man, Bunton, alighted from the car and went into the Duncan home. The sheriff then went to the house, called to Duncan, and when he responded, asked, "Is that your load?" to which Duncan gave an affirmative reply. He was then asked whether Bunton "had anything to do with the transporting of the liquor," to which he replied in the negative. The sheriff then went to the car and through the uncurtained portion observed that the back part of the car body was "piled high with filled sacks." The sheriff testified that every one of the persons from whom he received information concerning Duncan's activities was reliable and trustworthy; that he believed the reports they made to him, and that in instituting the search he acted in good faith and believed that the law was being violated in his immediate presence. There was not any evidence offered to the contrary, and upon this showing the court denied the motion to suppress.

It is unnecessary now to enter upon an extended discussion of the subject "probable cause." It has received consideration from this court in numerous recent cases to which reference is made. We content ourselves with saying that, in our judgment, the sheriff was fully justified in making the search and that the court did not err in its ruling. (*State ex rel. Neville* v. *Mullen*, above; *State ex rel. Merrell* v. *District Court*, 72 Mont. 77, 231 Pac. 1107; *State ex rel. Brown* v. *District Court*, above; *State ex rel. Hansen* v. *District Court*, 72 Mont. 245, 233 Pac. 126.)

In *Carroll* v. *United States*, 267 U. S. 132, 69 L. Ed. 543, 45 Sup. Ct. Rep. 280, decided March 2, 1925, the supreme court of the United States had before it facts and circumstances of no greater evidentiary value than the facts and circumstances disclosed in this case, and that court held that a sufficient showing of probable cause was made to justify the officer's searching an automobile without a search-warrant.

2. The punishment imposed in this instance exceeds the
[3] limit prescribed by the Codes of 1921, but is well within
the limits prescribed by Chapter 116, Laws of 1923.

It is the contention of counsel for the defendant that Chapter 116 is invalid in that it contravenes the provisions of section 23, Article V, of the state Constitution, which declares: "No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

So much of the title of Chapter 116 as is material here reads as follows: "An Act amending sections 11071, 11075 and 11079 of the Revised Codes of Montana of 1921, relating to the manufacture, sale and use of intoxicating liquors."

Reduced to its simplest forms, the specific contention now made is that if the legislative assembly of 1923 intended to increase the punishment for the unlawful transportation or possession of intoxicating liquors, it failed to indicate its intention in the title of the Act.

Sections 11048 to 11086, Revised Codes of 1921, are respectively, sections 1 to 39, inclusive, of Chapter 9, Laws of Extraordinary Session of 1921; hence it becomes necessary to inquire into the purpose and extent of that enactment so far as it is affected by Chapter 116.

The title of Chapter 9, so far as material now, follows: "An Act to restrict the manufacture, transportation, possession, sale and use of intoxicating liquors; defining the term 'intoxicating liquor'; defining common nuisance and providing for the abatement thereof; providing for the issuance of search-warrants and prescribing terms thereof; providing for the disposition of intoxicating liquors and confiscation and sale of vehicles, used in unlawful transportation thereof; creat-

ing a 'law enforcement fund'; providing for the appointment
and compensation of special officers; and fixing penalties for
the violation of this Act."

Section 1 of Chapter 9 (sec. 11048, Rev. Codes) defines
certain terms employed in the Act. Section 2 (sec. 11049, Rev.
Codes) declares: "No person shall on or after the date when
this Act goes into effect [March 22, 1921] manufacture, sell,
barter, transport, import, export, deliver, furnish, or possess
any intoxicating liquor except as authorized in this Act," *etc.*

Section 28 of Chapter 9 (sec. 11075, Rev. Codes) provides
a specific penalty for a first offense committed by manufactur-
ing or selling intoxicating liquors unlawfully, that is, a fine
not less than $100 nor more than $1,000, and imprisonment
in the county jail not less than thirty days nor more than
six months, and then proceeds: "Any person violating  *  *  *
any of the provisions of this Act, for which offense a special
penalty is not prescribed, shall be fined for a first offense not
more than $500.00." Clearly this second provision applies to
the offense of transporting or possessing intoxicating liquors
unlawfully. It is equally clear that a punishment was pre-
scribed for every offense denounced in section 11049.

Section 11075, as amended by Chapter 116, reads as follows:
"Any person who manufactures, sells, barters, transports, im-
ports, exports, delivers, furnishes, or possesses any intoxicating
liquor, in violation of any of the laws of the state of Montana,
relating to intoxicating liquors, shall, for the first offense, be
fined not less than two hundred ($200) dollars, nor more than
one thousand ($1,000) dollars and be imprisoned in the county
jail not less than sixty days nor more than six months," *etc.*

From a comparison of the provisions of this section as they
appear in Chapter 9 with the provisions of the same section
as they appear in Chapter 116, it is made manifest that the
purpose of the legislature in amending the section was to
establish a uniform penalty for all offenses defined in section
11049 and one which would be more severe than the penalties
theretofore prescribed.

It is contended that since section 11075 dealt with the penalties for unlawfully manufacturing, selling, using, transporting and possessing intoxicating liquor, the title to Chapter 116, which describes it as "relating to the manufacture, sale and use of intoxicating liquors," is not sufficient to meet the requirements of section 23, Article V of the Constitution quoted above. In plain terms, that section declares that a bill shall contain but one subject, which shall be clearly expressed in its title. It is conceded, as it must be, that Chapter 116 deals with only one subject, but it is contended that the one subject is not clearly expressed in the title.

"Subject," in the sense employed in the Constitution above, is the matter to which the Act relates (*Perkins* v. *Cook County*, 271 Ill. 449, Ann. Cas. 1917A, 27, 111 N. E. 580), and the purposes of the limitation in section 23, Article V, are to prevent the use of a title which may be a cover for surreptitious legislation, and to require such a title as is reasonably calculated to give notice of the contents of the bill (*Evers* v. *Hudson*, 36 Mont. 135, 92 Pac. 462). It is the rule in this state that [4] if the title fairly indicates the general subject and does not tend to mislead the members of the legislature or the people, it is sufficient. (*Lewis & Clark County* v. *Industrial Accident Board*, 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.)

As applied to an amendatory Act, these rules do not require [5] more than that the title shall refer to the statute to be amended, with sufficient particularity to identify it. (*People* v. *Braun*, 246 Ill. 428, 20 Ann. Cas. 448, 92 N. E. 917; *Worthington* v. *District Court*, 37 Nev. 212, Ann. Cas. 1916E, 1097, L. R. A. 1916A, 696, 142 Pac. 230; 1 Lewis' Sutherland on Statutory Construction, sec. 231.)

We need not stop to consider whether a reference by number [6] only to a code section to be amended is sufficient; there is some diversity of opinion upon the subject. (*State* v. *Mohler* (Or.), 237 Pac. 690; 1 Lewis' Sutherland on Statutory Construction, sec. 141.) But the authorities agree generally that all

difficulties are avoided if the title of the amendatory Act gives
the number of the section to be amended and indicates its sub-
ject matter. (1 Lewis' Sutherland on Statutory Construction,
sec. 141; *Heller* v. *People*, 2 Colo. App. 459, 31 Pac. 773.)
And it is the general rule that the reference in the title of the
amendatory Act to the subject matter of the section to be
amended need not be so comprehensive as to constitute a com-
plete index to or abstract of the section. "All that is required
in such case is a reasonable degree of certainty as to the
statute to be amended." (*In re White*, 33 Neb. 812, 51 N. W.
287.)

In *People* v. *Howard*, 73 Mich. 10, 40 N. W. 789, there was
involved the validity of an Act entitled "An Act to amend
Chapter 154 of the Revised Statutes of 1846, being Chapter
180, Compiled Laws, entitled 'Of offenses against the lives and
property of individuals.'" (Laws 1867, No. 116.) Chapter
154 was entitled "Of offenses against property," and not,
"Of offenses against the lives and property of individuals";
but the court held an amendatory Act valid, that its title
clearly expressed the subject and described the statute to be
amended with sufficient precision.

In *Commonwealth* v. *Brown*, 91 Va. 762, 28 L. R. A. 110, 21
S. E. 357, the statute assailed (Acts 1891–92, c. 363) was en-
titled "An Act to amend and re-enact sections 2131, 2133 [and
others mentioned] * * * of the code of Virginia in relation
to oysters." The sections referred to were parts of an Act
entitled "An Act for the preservation of oysters and to ob-
tain revenue for the privilege of taking them within the
waters of the commonwealth." It was held that the title of
the amendatory Act described sufficiently the sections to be
amended and met the requirements of the constitutional pro-
vision substantially the same as our own.

As indicated above, Chapter 9 of the Laws of the Extraordi-
nary Session of 1921, of which section 11075 formed a part,
dealt with the unlawful manufacture, sale, use, transportation,
and possession of intoxicating liquors, and the only complaint

that can be lodged against the title of Chapter 116 is that it does not describe the subject matter of that section as minutely as might have been done. Probably a better title [7] might have been chosen, but the selection of the title was a matter of legislative control in the first instance (*State v. McKinney,* 29 Mont. 375, 1 Ann. Cas. 579, 74 Pac. 1095), and this court will not declare the Act unconstitutional unless the insufficiency of the title is clear and unmistakable (*Goodell v. Judith Basin County,* 70 Mont. 222, 224 Pac. 1110).

The title of Chapter 116 designates by number the sections to be amended, and in very general terms indicates the subject to which each of those sections relates. The description of section 11075 is technically correct, so far as it goes. It might have gone further. It might have followed literally the language employed in the title to Chapter 9, but since it directs attention of all concerned to the fact that it was proposed to change the penalty for violating the prohibitory liquor laws, we think it is sufficient.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.