JUSTICE MCKINNON,
dissenting.
¶28 Since 1906, tibe people of Montana have reserved to themselves the power to approve or reject by referendum any act of the Legislature, except an appropriation of money. Nicholson v. Cooney, 265 Mont. 406, 410, 877 F.2d 486, 488 (1994). The referendum provision is set forth in Article III, Section 5, of Montana’s Constitution. In interpreting this provision, we must be guided by the principle that “initiative and referendum provisions of the Constitution should be broadly construed to maintain the maximum power in the people,” Nicholson, 265 Mont. at 411, 877 P.2d at 488 (citing Chouteau Co. v. Grossman, 172 Mont. 373, 378, 563 P.2d 1125, 1128 (1977)) and that judicial intervention in referenda or initiatives prior to an election is not encouraged, Cobb v. State, 278 Mont. 307, 310, 924 P.2d 268, 269 (1996). Additionally, in order to effectively protect and preserve the rights Montanans have reserved to themselves through the referendum process, pre-election review should be very deferential. Harper v. Greely, 234 Mont. 259, 265-66, 763 P.2d 650, 654 (1988).
¶29 These principles are primarily based upon two substantive provisions of the Montana Constitution. Article II, Section 1, provides:
Popular sovereignty. All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.
Article II, Section 2, provides:
Self-government. The people have the exclusive right of governing themselves as a free, sovereign, and independent state. They may alter or abolish the constitution and form of *305 government whenever they deem it necessary.
With these principles in mind, I turn to the primary concern of the Court — whether a referendum, LR-127, should be removed from consideration by Montana voters because its title includes more than 100 words, if statutory references are included.
¶30 Section 5-4-102, MCA, provides that bills referred by the Legislature to a vote of the people shall have a title of no more them 100 words. However, Montana’s Legislature has not provided guidance as to whether a list of affected statutes in a referendum title counts towards the 100-word limit for purposes of § 5-4-102, MCA. Although there have been several instances since the enactment of § 5-4-102, MCA, in 1979, where referendum titles have exceeded the 100-word limit, this is the first instance where there has been a challenge made to this Court.[1]
¶31 Petitioners and this Court rely on State ex rel. Bonner v. Dixon, 59 Mont. 58, 87-88, 195 P. 841, 848 (1921), overruled on other grounds, Bd. of Regents v. Judge, 168 Mont. 433, 543 P.2d 1323 (1975), as authority that numerals count as words in ballot titles. Opinion, ¶¶ 11-12, 20. Such reliance, however, is misplaced. Bonner involved a post-election request to eqjoin enforcement of an initiative passed under a 10-word limit on ballot titles. The question was whether “$5,000,000” in the phrase “Providing for $5,000,000 Bonds for Buildings at State Educational Institutions” counted as one word, or as three words. Noting that there had been “a substantial compliance with statutory requirements” and that there was nothing to indicate that the people had been injured or deceived by wording that possibly exceeded the 10-word limit, the Court rejected the challenge as a “hair-splitting technicality.” Bonner, 59 Mont. at 87, 195 P. at 848. Importantly, the Court excluded actual words from consideration in calculating the word limit because those words were required to be in the title. Thus, the Court held that “[t]he words Tor Initiative Measure No. 19,’ and ‘Against Initiative Measure No. 19,’ are properly excluded from computation of the number of words in the legend on the ballot....” Bonner, 59 Mont. at 87, 195 P. at 848.
¶32 Bonner does not, as Petitioners and this Court maintain, stand for the proposition that numbers or statutory references are to be counted as words. Opinion, ¶ 12. Indeed, the Court in Bonner specifically rejected a mechanical application of a statute similar to § 5-4-102, *306 MCA, and never directly addressed whether numbers count as words. More significantly, however, the ballot issue considered in Bonner was a citizen-proposed initiative, not a referendum. We have recognized that ballot titles of referenda are entitled to more deference than ballot statements of initiatives. In Harper, 234 Mont. at 265, 763 P. 2d at 654, we stated:
Because we find that the legislative referendum is a product of the Legislature and is passed in the form of a bill, its title should be examined according to the same standard applied to other legislation. If it results in greater deference being given to the ballot language which derives from the legislation rather than the petition, then that is appropriate due to the differences between the two sources.
Bonner therefore is not controlling authority for the Court’s determination that statutory section numbers count as “words.” Moreover, if a ballot initiative which arguably violates a word count was upheld, as it was in Bonner, then the deference to be accorded legislation, in the absence of authority to the contrary, warrants upholding the validity of LR-127’s title.
¶33 The Court further overlooks long-standing authority that “the title shall refer to the statute to be amended, with sufficient particularity to identify it.” State v. Duncan, 74 Mont. 428, 436, 240 P. 978, 980 (1925) (emphasis added). We explained in Duncan “the authorities agree generally that all difficulties are avoided if the title of the amendatory Act gives the number of the section to be amended and indicates its subject matter.” Duncan, 74 Mont. at 436-37, 240 P. at 980. “ ‘All that is required in such case is a reasonable degree of certainty as to the statute to be amended.’ ” Duncan, 74 Mont. at 437, 240 P. at 980 (quoting In re White, 33 Neb. 812, 51 N.W. 287 (1892)) (emphasis added). Duncan accords with the well-recognized principle that the title of an amendatory act must identify “with reasonable certainly” the statute or section to be amended. Norman Singer & J.D. Shambie Singer, Statutes and Statutory Construction vol. 1A, § 22:9, 277 (7th ed., Thomson 2009). Our caselaw reflects that an amendatory act “has a sufficient title, under a constitutional provision like ours, if it cite[s] the number of the section and the chapter of the Code to be amended and affected thereby.” State v. Courtney, 27 Mont. 378, 385, 71 P. 308, 310 (1903); see also State v. Silver Bow Ref. Co., 78 Mont. 1, 16-18, 252 P. 301, 305 (1926). Conversely, we have invalidated laws where the title did not give sufficient notice of an amendment to existing law made in the body of the bill. Coolidge v. Meagher, 100 *307 Mont. 172, 182-83, 46 P.2d 684, 687 (1935).
¶34 The overriding inquiry is whether the title fairly apprises the reader of the subject of the legislation and the law being amended, or whether the title is misleading. State ex rel. Bray v. Long, 21 Mont. 26, 28-31, 52 P. 645, 646-47 (1898), overruled on other grounds Palatine Ins. Co. v. N. Pac. Ry., 34 Mont. 268, 85 P. 1032 (1906). The Court concludes that the title of LR-127 is “complicated and confusing,” Opinion ¶ 20, yet it has failed to explain how the inclusion of the statutory references will mislead or confuse voters. As we recently noted, the ballot language must “identify the measure on the ballot so that a Montana voter, drawing on both official and unofficial sources of information and education, will [be able to] exercise his or her political judgment.” MEA-MFT v. State, 2014 MT 33, ¶ 11, 374 Mont. 1, 318 P.3d 702 (quoting Harper, 234 Mont. at 269, 763 P.2d at 657). The bill title supplied by the Legislature is not the only source of information explaining a ballot measure. The ballot also includes the Attorney General’s explanatory statement, which is the official ballot title (see §§ 13-27-312, -315, MCA), and the statements of implication. In light of our authority requiring an amendatory act to give notice of the statutes it is amending, the title supplied by the Legislature, together with the Attorney General’s ballot statement, fairly apprises the voters of the proposed legislation and is not misleading.
¶35 Indeed, SB 256 from the 1979 Legislative Session, which enacted the 100-word requirement, included citations to all of the amended sections in its title. As we held in Bonner, when we excluded required language from the word count, these section references in LR-127 were mandated by Duncan and thus similarly should be excluded from the word count.
¶36 Contrary to the Court’s conclusion today, I do not find that the plain meaning of the term “words” includes numbers or statutory references. See Opinion, ¶ 19. In holding that numbers count as words, the Court relies in part on authority from states which have specific statutes or rules addressing this issue. Opinion, ¶¶ 15-16. The Court reaches, and in my opinion errs, in citing authority from other states which have statutes or rules directing how numbers are to be considered. Statutory references are citations and, absent an indication from the Legislature to the contrary, should be construed consistent with our precedent. We have not, as demonstrated by the foregoing discussion, previously equated citations with words. The Court’s determination obscures a very important distinction present here — the absence of any direction from our Legislature that statutory references *308 are to be considered words. When a statute is equally susceptible to two interpretations, the one in favor of the peoples’ rights — such as the right the people of Montana have reserved to themselves to adopt laws by initiatives and referenda — should be adopted. See § 1-2-104, MCA. Accordingly, § 5-4-102, MCA, is reasonably susceptible to an interpretation that would exclude the list of affected statutes from the word count.
¶37 Finally, if Petitioners’ arguments were accepted, Montanans would be unable to vote on any issue, no matter how simple, that would require minor technical amendments to many sections of code. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. State v. Letasky, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. It is likewise plausible that, had LR-127 not included all affected statutes, a challenge would have been made pursuant to Duncan. Such a lose-lose situation leads to absurd results and is inconsistent with the right of Montana voters to consider matters referred by the Legislature. Letasky, ¶ 11.
¶38 I dissent from the Court’s decision which accepts Petitioners’ argument that LR-127 is invalid on grounds that its title contains more than 100 words. In my view, our decision is in conflict with the following authority: the deference to be accorded to the Legislature in constructing the title to a referendum, Harper, 234 Mont. at 165, 763 P.2d at 654; the requirement that statutory sections be included in a referendum title, Duncan, 74 Mont. at 428, 240 P. at 980; precedent that establishes that required language be excluded from the word count, Bonner, 59 Mont. at 87, 195 P. at 848; the preference in favor of a natural right, § 1-2-104, MCA; and the absence of authority supporting a conclusion that a number or citation should be considered a “word.” I would allow LR-127 to be on the ballot, thus enabling Montanans to accomplish the goals of popular sovereignty and self-government by voting on an important issue referred by the Legislature. To deny the right to vote on LR-127 because we have decided that numbers are words is in conflict with these principles and precedent. I dissent from the Court’s decision to the contrary.
¶39 The Court does not address Petitioners’ remaining contentions because of its resolution of the word-count challenge. As I have determined that § 5-4-102, MCA, does not render LR-127 invalid, I will address Petitioners’ remaining contentions.
¶40 Petitioners contend that the Attorney General’s legal sufficiency determination is incorrect because LR-127 encompasses more than one subject, in violation of Article V, Section 11(3), of the Montana *309 Constitution. According to Petitioners, LR-127 changes the election laws in at least two separate and substantial ways: it provides for an open primary election system, and it provides that the top two vote winners — and no other candidates — will advance to the general election, regardless of party affiliation. Additionally, according to Petitioners, LR-127 “essentially” eliminates the right of third parties to appear on the general election ballot while weakening all political parties by allowing only a “party preference” to be stated on the ballot.
¶41 “Consistent with its obligation to construe the statutes to promote, rather than to curtail, the people’s right of direct democracy,” this Court interprets the Attorney General’s legal sufficiency review authority narrowly. Montanans Opposed to 1-166 v. Bullock, 2012 MT 168, ¶ 13, 365 Mont. 520, 285 P.3d 435 (Baker, J., concurring); see also MEA -MFT, ¶ 11.
¶42 We have stated previously that the reasons “for this Court’s intervention in the initiative process prior to an election are quite limited.” State ex rel. Mont. Citizens for Preservation of Citizens’Rights v. Waltermire, 224 Mont. 273, 276, 729 P.2d 1283, 1285 (1986). We have assumed jurisdiction over pre-election challenges when the initiative was not properly submitted under the election laws, e.g., State ex rel. Livingstone v. Murray, 137 Mont. 557, 354 P.2d 552 (1960), and where the initiative was unconstitutional on its face, e.g., State ex rel. Steen v. Murray, 144 Mont. 61, 394 P.2d 761 (1964). Moreover, in Waltermire we specifically addressed whether an initiative was invalid because it presented more than one amendment in a single ballot in violation of the single-subject rule embodied in Article XIV, Section 11, of the Montana Constitution. We determined that:
Even if plaintiffs’ view is correct, this type of multiplicity is not a proper basis for this Court’s intervention in the initiative process prior to election. This challenge does not constitute the type of question of unconstitutionality on the face of the Initiative over which this Court has previously accepted pre-election jurisdiction. Neither is this a challenge of the propriety of submission of the Initiative to the voters. Without ruling upon the merits of the contention, we decline[ ] to consider the issue prior to election.
Waltermire, 224 Mont. at 277, 729 P.2d at 1285-86.
¶43 I would similarly decline to consider whether LR-127 violates the single-subject rule in violation of Article V, Section 11(3), of the Montana Constitution. I would not rule on the merits of Petitioners’ contentions and would conclude only that the challenge is not a proper basis for this Court’s intervention into the initiative process.
*310 ¶44 Finally, Petitioners contend that the Attorney General’s ballot statement violates § 13-27-312, MCA, in that it is untruthful, misleading, and contradictory. Section 13-27-312(4), MCA, requires that a ballot statement
must express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so as to create prejudice for or against the issue.
The ballot statement the Attorney General has approved for LR-127 is as follows:
The 2013 Legislature submitted this proposal for a vote. LR-127 generally amends election laws to provide that the two candidates who receive the most votes in certain primary elections for partisan offices will advance to the general election irrespective of political party affiliation. Candidates may state a political party preference that will appear on the ballot. LR-127 does not amend the primary process for party precinct elections or presidential primary elections. LR-127 amends primary election balloting by requiring all races to appear on the same ballot. LR-127 also generally amends certain related procedures regarding vacancies, write-in candidates, withdrawal of candidates, recall petitions, election judges, filing deadlines, certification of votes, ballot form and uniformity requirements, recounts, electioneering, election challenges, and contribution limitations.
¶45 Petitioners maintain that the Attorney General’s ballot statement for LR-127 does not provide fair notice, and provides contradictory and misleading information. Petitioners argue that LR-127 tells voters the primary process for party precinct and presidential primary elections will not change, even though the process will change because the formerly separate, party-based primary ballots would be combined into one ballot. Petitioners also point out that the referendum only allows candidates to indicate a party preference, instead of a party affiliation, and that it imposes a new requirement, in order to have a vote count, that voters must indicate a party preference. Petitioners argue that the statement in the title that other subjects will be “generally amended” omits certain important changes to the law.
¶46 Section 13-27-312(2)(a), MCA, establishes a limit of 135 words for a statement of purpose and implication for a ballot issue. That limit dictates that the statement will provide only a general overview of the ballot issue, not a full listing of all of its possible effects.
¶47 “To foreclose the prospect of endless and subjective challenges,” *311 this Court upholds ballot statements that meet the basic statutory requirements. Stop Over Spending Mont. v. State, 2006 MT 178, ¶ 18, 333 Mont. 42, 139 P.3d 788. As long as the Attorney General’s wording “fairly states to the voters what is proposed ... discretion as to the choice of language... is entirely [the Attorney General’s].” State ex rel. Wenzel v. Murray, 178 Mont. 441, 448, 585 P.2d 633, 637-38 (1978). In Harper, 234 Mont. at 269, 763 P.2d at 657, we rejected a challenge to referendum ballot statements even though “the language may not be the best conceivable statement.”
¶48 Here, it is my opinion that the Attorney General’s statement of purpose meets the requirements of § 13-27-312, MCA. Therefore, I would decline to intervene in the referendum process on grounds that the Attorney General’s ballot statement of purpose and implication does not comply with that statute.
¶49 For the reasons set forth above, I conclude that Petitioners’ arguments regarding the Attorney General’s legal sufficiency review have no merit.

 LR-111 (1993), LB-115 (2000), and LB-116 (2000), each included every amended and repealed section in their titles and thus arguably exceeded the 100-word limit.