*409 JUSTICE HARRISON
delivered the Opinion of the Court.
This is an action to declare unconstitutional Referendum 112 and the suspension of 1993 Mont. Laws 634 prior to a referendum vote. The District Court for the First Judicial District, Lewis and Clark County, granted summary judgment in favor of defendants.
Plaintiffs appeal, and defendant Secretary of State Mike Cooney cross-appeals. We affirm.
The issues are:
1. Did the District Court err in concluding that Counts II and V of the amended complaint were not time-barred under § 3-5-302(6)(a), MCA?
2. Does the suspension of Chapter 634 pending a referendum vote deny equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 4 of the Montana Constitution?
3. Does the suspension of Chapter 634, which placed the state’s budget out of balance, violate Article VIII, Section 9 of the Montana Constitution?
4. Does Chapter 634 constitute an appropriations measure on which a referendum vote is prohibited?
5. Does suspension of Chapter 634 constitute a surrender and suspension of the taxation power in violation of Article VIII, Section 2 of the Montana Constitution?
In 1993, the Montana legislature enacted a revision of state income tax and corporate tax laws. The measure, 1993 Mont. Laws 634 (Chapter 634), increases the income tax burden on some individual taxpayers while reducing it on others, increases minimum corporate taxes, and imposes graduated corporate tax rates. The purposes of the measure include raising revenues for the general operation of state government and balancing the state’s budget.
Had Montana voters adopted a proposed four percent general sales tax at the June 1993 primary election, Chapter 634 would have been repealed beginning January 1, 1994, and the sales tax would have taken effect at that time. However, the voters rejected the sales tax. Therefore, under the scheme adopted by the legislature, Chapter 634 remained in effect.
During the summer of 1993, defendants Natelson and Montanans for Better Government circulated petitions in support of Referendum 112, in order to place Chapter 634 on the ballot in the November 1994 general election pursuant to Article III, Section 5 of the Montana Constitution. On September 3, 1993, defendant Secretary of State *410 Mike Cooney certified to the Governor that he had received petitions containing sufficient signatures to place Chapter 634 on the ballot at that election. On September 28, 1993, defendant Cooney certified to the Governor that he had received petitions containing sufficient signatures to require suspension of Chapter 634 until the vote on Referendum 112, pursuant to subsection (2) of the Constitutional referendum power.
The Governor issued a proclamation calling the legislature into special session. Among other things, the proclamation stated that “the suspension of [Chapter 634] has made its provisions inoperative, thereby making it virtually impossible to balance the state’s budget without legislative action.”
Plaintiffs filed this action for declaratory judgment on October 18, 1993. While it was pending before the District Court, the special session of the legislature began. By the close of the special session in December 1993, the legislature had made substantial cuts in appropriations in order to balance the budget.
Plaintiffs’ amended complaint contains seven counts. Counts I through VI challenge the constitutionality of Referendum 112. Count VII alleges fraud on the part of defendants Natelson and Montanans for Better Government. At the hearing giving rise to this appeal, the District Court heard only those claims relating to the constitutionality of Referendum 112. Plaintiffs’ fraud claim, Count VII of the amended complaint, was reserved for possible hearing at a later date.
The District Court thoroughly analyzed the issues in a twenty-four page memorandum and order. Before it reached the plaintiffs’ constitutional arguments, it rejected the argument of defendant Cooney that portions of the amended complaint were time-barred. The court then considered and rejected all of plaintiffs’ constitutional arguments, upholding the constitutionality of the referendum process in this case.
❖ * *
This case requires reexamination of the referendum power which the people of Montana have reserved to themselves since 1906, when it was first adopted by amendment to the Montana Constitution. See Art. V, Sec. 1, Mont. Const. (1889). The referendum provision of Montana’s present Constitution provides:
Referendum. (1) The people may approve or reject by referendum any act of the legislature except an appropriation of money. A referendum shall be held either upon order by the legislature or upon petition signed by at least five percent of the qualified electors *411 in each of at least one-third of the legislative representative districts. The total number of signers must be at least five percent of the qualified electors of the state. A referendum petition shall be filed with the secretary of state no later than six months after adjournment of the legislature which passed the act.
(2) An act referred to the people is in effect until suspended by petitions signed by at least 15 percent of the qualified electors in a majority of the legislative representative districts. If so suspended the act shall become operative only after it is approved at an election, the result of which has been determined and declared as provided by law.
Art. Ill, Sec. 5, Mont. Const.
In interpreting this provision, we are guided by the principle that “initiative and referendum provisions of the Constitution should be broadly construed to maintain the maximum power in the people.” Chouteau County v. Grossman (1977), 172 Mont. 373, 378, 563 P.2d 1125, 1128. We are also mindful, in considering this appeal, of the first two substantive provisions of the Montana Constitution. Article II, Section 1, provides:
Popular sovereignty. All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.
Article II, Section 2, provides:
Self-government. The people have the exclusive right of governing themselves as a free, sovereign, and independent state. They may alter or abolish the constitution and form of government whenever they deem it necessary.
With these principles in mind, we now consider the issues raised on appeal.
Issue 1
Did the District Court err in concluding that Counts II and Y of the amended complaint were not time-barred under § 3-5-302(6)(a), MCA?
Counts II and V of plaintiffs’ amended complaint allege that there are constitutional prohibitions against putting Chapter 634 to a public vote, which claims do not involve the issue of suspension of the law prior to the election. Secretary of State Cooney argues that these counts of the complaint are barred under § 3-5-302(6)(a), MCA, because the claims raised therein were not filed within 30 days after the ballot issue was certified to the Governor, on September 3, 1993.
*412 On September 27, 1993, defendants Natelson and Montanans for Better Government filed a petition for declaratory judgment in this Court. They named as defendants Montanans for Responsible Government, P.A.C., and the State of Montana, and asked for a declaratory judgment that the suspension of Chapter 634 and its placement on the ballot did not violate federal or state constitutional provisions. Pursuant to order of this Court, responses were filed by the same counsel who appear in the present case on behalf of the plaintiffs and the Montana Secretary of State. This Court dismissed the action for declaratory judgment, without substantive discussion, on October 14,1993.
As stated above, the present action was filed four days later, on October 18,1993. The District Court ruled that the statute of limitations as to Counts II and V of the amended complaint was equitably tolled during the pendency of the declaratory judgment action.
The doctrine of equitable tolling of a statute of limitations applies when a claimant in good faith pursues one of several possible legal remedies and meets three criteria: (1) timely notice to the adverse party within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the adverse party in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the claimant in filing the second claim. Harrison v. Chance (1990), 244 Mont. 215, 228, 797 P.2d 200, 208. Cooney does not claim any deficiencies concerning the three criteria listed in Harrison. Rather, he asserts that equitable tolling is not available here because the plaintiffs were not the ones who filed the “first claim,” the action for declaratory judgment in this Court. He cites Erickson v. Croft (1988), 233 Mont. 146, 760 P.2d 706, in which this Court quoted a California case describing equitable tolling as available where an injured person has several legal remedies and, reasonably and in good faith, pursues one.
Cooney’s argument is not persuasive. In this case, there has been no showing of lack of notice or of prejudice to any party. The plaintiffs filed this action in District Court promptly after the action for declaratory judgment was dismissed by this Court. In this instance, where some defendants attempted to bypass the District Court by filing an original proceeding in this Court, and where this Court ordered responses to the arguments on the issues, we will not impose a requirement that the plaintiffs should have second-guessed that the action in this Court would ultimately be dismissed.
We conclude the plaintiffs should not be penalized because of the premature attempt by some of the defendants to have this Court *413 resolve the same or similar issues as those raised in this action. We hold that the District Court did not err in ruling that Counts II and V of the amended complaint are not time-barred, under the doctrine of equitable tolling.
Issue 2
Does the suspension of Chapter 634 pending a referendum vote deny equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Article II, Section 4 of the Montana Constitution?
Plaintiffs’ argument is based upon their interpretation of several reapportionment cases, most notably Reynolds v. Sims (1964), 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. Reynolds was a case concerning apportionment of legislative districts for the Alabama legislature. Despite Alabama’s constitutional requirements for legislative representation based on population and for decennial reapportionment, the 1900 census still formed the basis for the existing state legislative apportionment in 1961, when the complaint in Reynolds was filed. The complaint alleged serious discrimination against voters in counties whose populations had grown proportionately more than others since the 1900 census. In affirming a holding that plaintiffs had proven a violation of the Equal Protection Clause, the Court stated:
[Representative government is in essence self-government through the medium of elected representatives of the people, and each and every citizen has an inalienable right to full and effective participation in the political processes of his State’s legislative body. Most citizens can achieve this participation only as qualified voters through the election of legislators to represent them. Full and effective participation by citizens in state government requires, therefore, that each citizen have an equally effective voice in the election of members of his state legislature.
Reynolds, 377 U.S. at 565, 84 S.Ct at 1382.
Plaintiffs argue that the suspension of Chapter 634 through the initiative of a small minority of electors violates this principle. They maintain that “[i]f a minority can negate a legislative act carried out through the body representing the will of the majority, the principles of equal representation — upon which both our state and federal governments rest — are rendered void.”
The authority cited by the plaintiffs is not dispositive of this case, nor is their argument persuasive. Unlike the reapportionment cases, this is not a case concerning access to the legislative process. Nor have *414 plaintiffs met the requirement under traditional equal protection analysis of demonstrating that any class or segment of the population has been “fenced out” of the referendum process.
Here, the majority, through a constitutional referendum provision, has affirmatively granted certain powers to a minority. The majority retains the power to eliminate the referendum provision from the Montana Constitution or to amend it to increase the numbers of signatures needed to put a referendum on the ballot or to suspend a law through the referendum process. “[TJhere is nothing in the language of the Constitution, our history, or our cases that requires that a majority always prevail on every issue.” Gordon v. Lance (1971), 403 U.S. 1, 6, 91 S.Ct. 1889, 1892, 29 L.Ed.2d 273, 276.
Additionally, and critically, the referendum process is not yet complete in the present case. All Montana voters will have the opportunity to vote on Chapter 634 in the November 1994 general election. The majority of the voters at that election will decide the fate of Chapter 634. Therefore, the referendum process is not comparable, as plaintiffs attempt to argue, to a veto power given to a small group.
Article III, Section 5 of the Montana Constitution expresses the will of the majority in Montana on the matter of allowing referenda to be placed on the ballot and allowing the suspension of laws which are referred to the people. We hold that the District Court did not err in ruling that plaintiffs have failed to demonstrate any violation of their right to equal protection under the law.
Issue 3
Does the suspension of Chapter 634, which placed the state’s budget out of balance, violate Article VIII, Section 9 of the Montana Constitution?
Article VIII, Section 9 of the Montana Constitution provides: “Balanced budget. Appropriations by the legislature shall not exceed anticipated revenue.” Plaintiffs point out that Montana’s budget went out of balance when Chapter 634 was suspended, because appropriations made by the 1993 legislature then significantly exceeded the anticipated revenues for the biennium. They argue that harmonizing the referendum provision with the balanced budget provision requires a conclusion that general revenue bills are off limits to the referendum process.
*415 We disagree. Article VIII, Section 9 places a restriction on the legislature, not on the people. The contention that it is inconsistent with the operation of the suspension provision in this case is groundless.
The reaction of the executive and legislative branches in calling a special session of the legislature to deal with an unforeseen decline in revenue (or increase in expenditures) might have been prompted by any number of causes. See, e.g., State v. Erickson (1933), 93 Mont. 466, 473, 19 P.2d 227, 229. Calling a special session to reconcile expenditures with anticipated revenues was entirely proper. The purpose of the balanced budget provision is therefore fully compatible with operation of the referendum process.
We hold that the District Court was correct in ruling that plaintiffs have shown no violation of Article VIII, Section 9 of the Montana Constitution.
Issue 4
Does Chapter 634 constitute an appropriations measure on which a referendum vote is prohibited?
This argument refers to the prohibition in subsection (1) of the referendum clause: “The people may approve or reject by referendum any act of the legislature except an appropriation of money.” (Emphasis added.) The plaintiffs argue that Chapter 634 constitutes an appropriation of money because it is a general revenue measure which is “inextricably tied” to appropriations legislation and is used to balance Montana’s state budget. They contend that the referendum provision cannot be read in isolation, but must be harmonized with other constitutional provisions, including the balanced budget requirement discussed above. Plaintiffs cite cases in which courts in Maryland and Michigan have interpreted the meaning of the word “appropriation” as used in their state constitutions in relation to specific referenda measures in those states.
The definition of “appropriation” under the above provision in Montana’s Constitution is well-established and quite limited. Along line of Montana cases has established that “appropriation” refers only to the authority given to the legislature to expend money from the state treasury.
“Appropriation” means an authority from the law-making body in legal form to apply sums of money out of that which may be in the treasury in a given year, to specified objects or demands against the state.
*416 State v. Dixon (1921), 59 Mont. 58, 78, 195 P. 841, 845. See also Board of Regents of Higher Education v. Judge (1975), 168 Mont. 433, 543 P.2d 1323.
In the present case, the District Court stated,
Since Chapter 634 does not relate to the actual use or expenditure of money, the Court concludes it is not an act for the appropriation of money, and therefore, it is not excluded from the referendum process.
We agree with the District Court. Chapter 634 is a pure revenue-raising measure, and contains no provisions for expenditures. Itwas offered, debated, and voted upon separately from appropriation bills considered by the 1993 Montana legislature. We hold that Chapter 634 does not constitute an appropriations measure on which a referendum vote is prohibited.
Issue 5
Does suspension of Chapter 634 constitute a surrender and suspension of the taxation power in violation of Article VIII, Section 2 of the Montana Constitution?
In this argument, plaintiffs refer to the provision of the Montana Constitution that “[t]he power to tax shall never be surrendered, suspended, or contracted away.” Plaintiffs argue that this specific prohibition controls over the general right of the people to suspend the effect of legislation under the referendum power. They also argue that Referendum 112 has resulted in a surrender of the power to tax to a small minority of Montanans.
As under Issue 4, the plaintiffs have cited cases from two other states in which similar state constitutional provisions have been interpreted in relation to exercises of the referendum power reserved to the people of those states. Because we conclude that the language of our Constitution is clear on its face, we decline to adopt, extend, and apply the reasoning of those cases to the language of the Montana Constitution and to the facts of this case.
Plaintiffs fail to distinguish between a tax measure and the taxing power. There has been no surrender or suspension of the taxing power; Referendum 112 has merely resulted in the suspension and referral of one measure by which the taxing power is exercised. As the District Court pointed out, the State of Montana is still collecting taxes, and will continue to do so; under Chapter 634, if the voters approve it, or under the law in existence prior to the legislative enactment of Chapter 634, if the voters reject it. We hold that the *417 plaintiffs have failed to establish any violation of the prohibition against suspension or surrender of the taxing power.
Affirmed.
CHIEF JUSTICE TURNAGE and JUSTICE WEBER concur.