OP 13-0789

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 76

_____

MEA-MFT, the Montana State AFL-CIO
The Montana Public Employees
Association, the Montana Human Rights
Network and American Federation of State,
County and Municipal Employees,

        Petitioners,

   v.

THE STATE OF MONTANA, HONORABLE
TIM FOX, in his capacity as Attorney General,

        Respondent.

O P I N I O N
A N D
O R D E R

_____

¶1    This is an original proceeding. The petition challenges the legal sufficiency of Legislative Referendum 127 (LR-127), a measure enacted by the Legislature in 2013 as a referendum to be put to a public vote at the time of the November 2014 general election.

¶2    The petition alleges that the Attorney General's approval of the proposed ballot measure for legal sufficiency was incorrect under Montana law, and seeks to enjoin the State of Montana from placing the measure on the general election ballot. Petitioners also seek attorney fees and costs.

¶3    On December 5, 2013, the Attorney General filed a response asserting that the legal review was correct and asking that the petition be denied. On December 10, 2013, this Court asked the parties for supplemental briefing. The briefs have been filed and the matter is ripe for a decision.

1

¶4 This Court has original jurisdiction to review the Attorney General's determination that a ballot measure referred by the Legislature is legally sufficient. Section 3-2-202(3), MCA; Mont. Const. art. IV, § 7.

¶5 We restate the issue as follows: Whether the State of Montana should be enjoined from placing LR-127 on the general election ballot in 2014 because of legal deficiencies in its title.

## DISCUSSION

¶6 LR-127 was passed by the Montana Legislature in 2013 as Senate Bill 408. The measure proposes to eliminate political party primary elections as they traditionally have been held in this State, replacing them with a system in which all candidates would appear on a single primary ballot. The two candidates who receive the most votes would advance to the general election, regardless of party affiliation.

¶7 In Montana the people may enact laws by initiative, and may approve or reject any act of the Legislature except for appropriations of money. Mont. Const. art. III, §§ 4, 5. As in the case of LR-127, the people may vote in a referendum upon matters referred to them upon order of the Legislature. Mont. Const. art. III, § 5. The Montana Constitution allows Montana citizens to go to court and present pre-election challenges to the manner in which a referendum qualifies for the ballot. Mont. Const. art. IV, § 7(2) (enacted as Const. Amend. No. 21, approved November 6, 1990). This Court has original jurisdiction as provided in § 3-2-202, MCA, to review the Attorney General's ballot statements for referred measures and the Attorney General's legal sufficiency

2

determination in an action brought under § 13-27-316, MCA. The petitioners have invoked those constitutional and statutory provisions in this action.[1]

¶8 Montana law requires the Attorney General to examine proposed ballot issues "for legal sufficiency," which means compliance with statutory and constitutional requirements governing submission of the proposed issue to the voters. Section 13-27-312(1) and -(7), MCA.[2] Montana law further provides that both proponents and opponents of ballot measures may initiate original proceedings in this Court to challenge the sufficiency of the Attorney General's review. Section 13-27-316, MCA. This Court is required to examine the issue and to "render a decision as to the adequacy of the ballot statements or the correctness of the attorney general's determination." Section 13-27-316(3)(c), MCA.

¶9 For many decades the Legislature has limited the number of words that may appear in the title of matters that it refers to the people for a referendum vote. *See e.g. State ex rel. Bonner v. Dixon*, 59 Mont. 58, 195 P. 841 (1921). The current limitation, in place since 1979, provides that "[a]ll bills referred by the legislature to a vote of the people shall have a title of no more than 100 words." Section 5-4-102, MCA. The 100-word limitation applies *only* to measures that the Legislature refers to the people for a vote.

---

[1] Many of the cases cited by the Dissent regarding this Court's reticence to entertain pre-election challenges to ballot measures were decided prior to enactment of these provisions and thus provide at best tepid support for a lack of judicial action in this case.

[2] This legal review determines whether the proposal complies with applicable constitutional and statutory requirements, but does not include consideration of the substantive legality of the provision. *Montanans Opposed to I-166 v. State*, 2012 MT 168, ¶ 3, 365 Mont. 520, 285 P.3d 435.

¶10    The Petitioners' challenge to LR-127 is that it violates § 5-4-102, MCA, because the title exceeds 100 words.  The title to LR-127 is:

> AN ACT GENERALLY REVISING ELECTION LAWS; PROVIDING THAT THE TWO CANDIDATES WHO RECEIVE THE MOST VOTES IN CERTAIN PRIMARY ELECTIONS FOR PARTISAN OFFICES ADVANCE TO THE GENERAL ELECTION IRRESPECTIVE OF PARTY AFFILIATION; ELIMINATING SEPARATE PARTY BALLOTS AND PROVIDING FOR ONE PRIMARY BALLOT CONTAINING ALL PRIMARY RACES; PROVIDING THAT THE PROPOSED ACT BE SUBMITTED TO THE QUALIFIED ELECTORS OF MONTANA; AMENDING SECTIONS 2-16-615, 5-2-402, 5-2-403, 5-2-404, 5-2-406, 7-2-2219, 7-3-176, 7-3-218, 7-3-313, 7-3-412, 7-3-512, 7-3-704, 7-3-1256, 7-4-2106, 7-4-2206, 7-4-2302, 7-4-2310, 7-4-4112, 13-1-101, 13-1-103, 13-4-102, 13-10-201, 13-10-203, 13-10-204, 13-10-209, 13-10-211, 13-10-301, 13-10-325, l3-10-326, l3-10-327, 13-10-402, 13-10-403, 13-10-404, 13-10-405, 13-10-501, 13-10-504, 13-10-505, 13-12-201, 13-12-202, 13-12-203, 13-12-205, l3-12-207, 13-13-214, 13-13-225, 13-l3-241, 13-14-111, 13-14-112, l3-14-113, 13-14-114, 13-14-115, 13-14-117, 13-14-118, 13-15-201, l3-15-205, 13-15-206, 13-15-208, 13-15-405, 13-15-406, 13-15-507, l3-16-101, 13-16-201, 13-16-211, 13-16-412, 13-16-418, 13-16-419, 13-16-501, 13-17-103, 13-19-205, 13-21-205, 13-25-101, 13-25-201, 13-25-205, 13-25-303, 13-35-106, 13-35-205, 13-35-206, 13-35-207, l3-35-214, 13-35-218, 13-35-221, 13-35-225, 13-35-226, 13-36-101, l3-36-102, 13-36-103, 13-36-104, 13-36-201, 13-36-202, 13-36-203, 13-36-206, 13-36-207, 13-36-209, 13-36-210, 13-36-211, 13-36-212, 13-37-127, 13-37-216, 13-37-218, 13-38-101, AND 13-38-201, MCA; REPEALING SECTIONS 13-10-302, 13-10-303, 13-10-305, 13-10-311, 13-10-502, 13-10-503, 13-10-507, 13-10-601, 13-10-602, 13-10-604, AND 13-38-204, MCA; AND PROVIDING AN EFFECTIVE DATE AND AN APPLICABILITY DATE.

The point of disagreement between the Petitioners and the Attorney General is whether to count the many statutes listed in the title of LR-127 as "words" under § 5-4-102, MCA. These citations list each section of the Montana Code that must be either amended or repealed to effectuate the Legislature's proposal for a new primary election system. Petitioners assert that each of these statutory citations must be considered as a word,

4

while the Attorney General urges that statutory citations are not words and should not count in determining compliance with § 5-4-102, MCA. There are three alternatives for applying § 5-4-102, MCA: ignore all the statutory citations; count each of the statutory citations as one word; or treat each of the statutory citations as the number of words required to say the citation ("13-12-203" would be counted as "thirteen, twelve, two zero three" for a total of five words). The only way to find that the title complies with § 5-4-102, MCA, is to ignore each of the statutory citations.

¶11 The closest judicial decision that bears upon this issue is *Bonner*. In that case this Court considered a post-election challenge to an initiative that had been approved by the voters. The statute in effect at that time (1921) imposed a ten-word limit on the title of such a measure as it would appear on the ballot. The title of the initiative contained the number "$5,000,000," and the dispute was whether that should be counted as one word or three under the statute (if three words, it would be read as "five million dollars.").[3] This Court ultimately determined that even if the number were read as three words the title would only violate the ten-word limit by two words. The Court determined that no person could have been misled by the title even if it violated the ten-word limit by two words, and such a minor technical violation of the statute was not sufficient to defeat the

---

[3] In considering the word-count issue, this Court did not count the phrase "For [or "Against"] Initiative Measure No. 19" that appeared on the ballot just before the actual title of the measure that was subject to the ten-word limitation. These words were part of the ballot language under a separate directive to allow the voter to check the box on the ballot that reflected his or her vote, and were not a part of the title that was subject to the statutory word-count limitation.

will of the voters who had already enacted the provision. *Bonner*, 59 Mont. at 87, 195 P. at 848.

¶12 The *Bonner* case is instructive on several points applicable to the current proceeding. First, when applying a statute limiting the number of words in the title of a ballot measure, this Court clearly decided the case based upon the underlying assumption that numbers count as words. If the number in the title had not been considered to be at least one word, there would have been no basis for the controversy and no need for the decision. Second, the Court determined that a minor or technical violation of a statute limiting the number of words in a title will not automatically invalidate an initiative already enacted by the people. Third, an important consideration in determining the materiality of a violation of a statutory word limit is whether voters could have been misled. LR-127 does not withstand scrutiny when examined using any of these criteria.

¶13 The Legislature has not specifically defined "word" for purposes of § 5-4-102, MCA. "Word" is defined in Montana law as part of the term "folio," which means "100 words, counting every two *letters or numbers* necessarily used as a word."[4] Section 1-1-203(3), MCA. This equation of words and numbers is significant because "[w]henever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears." Section 1-2-107, MCA. This Court has applied that rule of statutory construction on numerous occasions. *Dept. of Revenue v. Gallatin*

---

[4] There were formerly a number of statutes that provided that payment, such as for published legal notices, would be per "folio." *See e.g.* § 18-7-203, MCA.

6

*Outpatient Clinic*, 234 Mont. 425, 430, 763 P.2d 1128, 1131 (1988); *State v. Merry*, 2008 MT 288, ¶ 12, 345 Mont. 390, 191 P.3d 428; *Graziano v. Stock Farm Homeowners Assoc.*, 2011 MT 194, ¶ 32, 361 Mont. 332, 258 P.3d 999.

¶14 Other authorities also support the conclusion that numbers and discrete combinations of numbers, are words. The usual and ordinary meaning of a "word" includes any character or set of charters separated by whitespace, which includes numbers. This definition of "word" is widely supported. The American Heritage Dictionary defines "word" as "a sound or combination of sounds, or its representation in writing or printing, that symbolizes and communicates a meaning." *Word*, American Heritage Dictionary Online, (last accessed March 3, 2014). Similarly, Merriam-Webster defines "word" as a "written or printed character or combination of characters representing a spoken word." *Word*, Merriam-Webster Dictionary Online (last accessed March 3, 2014). Under these common definitions of "word" a printed section number of a statute constitutes a word because it is a series of characters in writing that communicates a spoken meaning.

¶15 Election authorities regularly define word to include numbers. In Florida, "[e]ach whole number shall count as a word" when determining the word count for constitutional initiative ballot titles and summaries. Fl. Admin. Code IS-2.009(4)(g). In California, the Elections Code provides that "any number consisting of a digit or digits shall be considered as one word. Any number which is spelled, such as 'one' shall be considered as a separate word or words. 'One' shall be counted as one word whereas 'one hundred' shall be counted as two words. '100' shall be counted as one word." Cal. Elections Code

7

§ 1-209(a)(7). Similarly, Oregon defines "words" to include numbers. Or. Admin. R. 165-022-000(c).

¶16 Similarly, other courts have treated numbers as words. *Northbrook Digital v. Vendio Services*, 625 F. Supp. 2d 728, 733-734 (D. Minn. 2008) (the phrase "Docket 59" constituted two words); *Franklin v. Florida*, 887 So. 2d 1063, n. 3 (Fla. 2004) (court implicitly accepted the numerical sections of statutes as words); *Cook v. Baker*, 214 P.2d 787 (Colo. 1950) (the phrase "section 14" constituted two words); *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 293 P.3d 874 (Nev. 2013) (implicitly finding that "Section 501(c)" constitutes two words); and *Bendi v. Kulongoski*, 902 P.2d 1189 (Or. 1995) ("March 30, 1995" is three words).

¶17 At the same time, there is no authority that would either allow or require a construction of § 5-4-102, MCA, that would just ignore all of the statutory citations in LR-127. A person reading the title would naturally read the statutory citations as words. The numeral "13" means and is read as the word "thirteen." There is no other way to logically apply § 5-4-102, MCA.

¶18 This does not mean that the Legislature may submit to the voters only simple measures that impact few existing statutes. There is no binding authority that specifically requires inclusion of the citation of each amended or repealed statute in the title of a referred measure. While *State v. Duncan*, 74 Mont. 428, 240 P. 978 (1925) has been cited for this proposition, it is inapposite to the statute at issue here. Duncan was convicted of the unlawful transportation and possession of intoxicating liquor. On appeal he attacked the validity of the statute under which he was charged, arguing that it violated

8

the requirement that legislative bills contain only "one subject." In deciding that the title of the statute at issue contained only one subject, this Court stated that the title of an amendatory act should refer to the "statute to be amended with sufficient particularity to identify it." *Duncan*, 74 Mont. at 436, 240 P. at 980. Duncan is applicable to legislative actions to adopt and amend statutes, and is directed toward legislators who are schooled in the legislative process. It did not involve a matter referred to the people for a vote and did not involve any statute limiting the words in the title of a matter referred to the people for a vote. Listing all affected statutes in the title of a ballot measure is not mandated by law.

¶19 We conclude that each of the statutory citations in the title of LR-127 is a "word" for purposes of § 5-4-102, MCA. The Legislature chose to place the 100-word limitation into the statute and must comply with its own law when referring a matter to the people for a vote. Furthermore, the title of LR-127 is not a mere technical violation of the statute, but is substantially in excess of the 100-word limit imposed by the Legislature.

¶20 Finally, the title of LR-127 on its face, is complicated and confusing. The clear purpose of the Legislature's 100-word limit in § 5-4-102, MCA, as this Court determined in regards to the different word limitation in *Bonner*, is to insure that voters are not misled or confused by complex titles of the measure in the ballot language. The title of LR-127 lists approximately 100 separate statutes that would be amended and eleven that would be repealed in order to achieve the new proposed primary election system. It would take most persons well-versed in the law a substantial amount of time and study to understand the details and implications of these changes. Unlike the measure in *Bonner*,

9

the title of a referendum that lists 111 statutes that would be amended or repealed poses a substantial risk of misleading or confusing voters.

¶21 This Court stated many years ago that the "purposes of the ballot are: (1) to inform the voters of the nature and purposes of the measure; and (2) to afford each elector a means of expressing his approval or disapproval." *Sawyer Stores v. Mitchell*, 103 Mont. 148, 160, 62 P. 342, 349 (1936). To that end, § 5-4-102, MCA, limits the title of all bills referred by the Legislature to 100 words. The statutory requirement is plain and unambiguous. Legislative enactments must first be interpreted according to the plain meaning of the language in the statute. Sections 1-2-101 and -102, MCA; *State v. Incashola*, 1998 MT 184, ¶ 11, 289 Mont. 399, 961 P.2d 745.

¶22 The Attorney General conducted a legal review of LR-127 pursuant to § 13-27-315, MCA, and determined that LR-127 did not conflict with another ballot issue and that it was legally sufficient. However, the title of LR-127 does not comply with the plain meaning of the Legislature's 100-word limit found in § 5-4-102, MCA. Therefore, LR-127 is not legally sufficient. Accordingly,

¶23 IT IS ORDERED that the State of Montana is enjoined from placing LR-127 on the 2014 general election ballot.

¶24 IT IS FURTHER ORDERED that Petitioners' request for attorney fees is denied.

Dated this 25th day of March, 2014.

/S/ MIKE McGRATH

10

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE


Justice Beth Baker, concurring.

¶25    I agree with virtually every point made by the Dissent.  I disagree with the Court in particular that the title of the measure in question, especially when considered in conjunction with the other ballot statements, is confusing or misleading.  Nonetheless, the Legislature has created an irreconcilable conflict that only it can resolve and, for that reason, I am constrained to conclude that LR-127 must be withheld from the ballot.

¶26    It is a fundamental principle that the Court must, in attempting to harmonize statutes, attempt to give effect to all provisions of the law without inserting what the Legislature has omitted from a statute or omitting what the Legislature has inserted.  Section 1-2-101, MCA.  Although it appears to be longstanding practice of the Legislature and the Legislative Services Division not to count numbers as words in determining the length of the title of a measure referred to the voters, the plain language of § 5-4-102, MCA, does not accommodate that practice.

¶27    It would be a simple fix for the Legislature to amend that section to provide, "All bills referred by the legislature to a vote of the people shall have a title of no more than 100 words, *exclusive of section numbers of any statutes being amended or repealed.*"  The Court, however, cannot supply the omitted language.  I believe the Court correctly

11

concludes that we would have to ignore § 5-4-102, MCA, in order to deny the Petitioners' challenge in this case.

/S/ BETH BAKER

Justice Laurie McKinnon, dissenting.

¶28 Since 1906, the people of Montana have reserved to themselves the power to approve or reject by referendum any act of the Legislature, except an appropriation of money. *Nicholson v. Cooney*, 265 Mont. 406, 410, 877 P.2d 486, 488 (1994). The referendum provision is set forth in Article III, Section 5, of Montana's Constitution. In interpreting this provision, we must be guided by the principle that "initiative and referendum provisions of the Constitution should be broadly construed to maintain the maximum power in the people," *Nicholson*, 265 Mont. at 411, 877 P.2d at 488 (citing *Chouteau Co. v. Grossman*, 172 Mont. 373, 378, 563 P.2d 1125, 1128 (1977)) and that judicial intervention in referenda or initiatives prior to an election is not encouraged, *Cobb v. State*, 278 Mont. 307, 310, 924 P.2d 268, 269 (1996). Additionally, in order to effectively protect and preserve the rights Montanans have reserved to themselves through the referendum process, pre-election review should be very deferential. *Harper v. Greely*, 234 Mont. 259, 265-66, 763 P.2d 650, 654 (1988).

¶29 These principles are primarily based upon two substantive provisions of the Montana Constitution. Article II, Section 1, provides:

> Popular sovereignty. All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.

Article II, Section 2, provides:

> Self-government. The people have the exclusive right of governing themselves as a free, sovereign, and independent state. They may alter or

12

> abolish the constitution and form of government whenever they deem it necessary.

With these principles in mind, I turn to the primary concern of the Court—whether a referendum, LR-127, should be removed from consideration by Montana voters because its title includes more than 100 words, if statutory references are included.

¶30 Section 5-4-102, MCA, provides that bills referred by the Legislature to a vote of the people shall have a title of no more than 100 words. However, Montana's Legislature has not provided guidance as to whether a list of affected statutes in a referendum title counts towards the 100-word limit for purposes of § 5-4-102, MCA. Although there have been several instances since the enactment of § 5-4-102, MCA, in 1979, where referendum titles have exceeded the 100-word limit, this is the first instance where there has been a challenge made to this Court.[5]

¶31 Petitioners and this Court rely on *State ex rel. Bonner v. Dixon*, 59 Mont. 58, 87-88, 195 P. 841, 848 (1921), *overruled on other grounds*, *Bd. of Regents v. Judge*, 168 Mont. 433, 543 P.2d 1323 (1975), as authority that numerals count as words in ballot titles. Opinion, ¶¶ 11-12, 20. Such reliance, however, is misplaced. *Bonner* involved a post-election request to enjoin enforcement of an initiative passed under a 10-word limit on ballot titles. The question was whether "$5,000,000" in the phrase "Providing for $5,000,000 Bonds for Buildings at State Educational Institutions" counted as one word, or as three words. Noting that there had been "a substantial compliance with statutory requirements" and that there was nothing to indicate that the people had been injured or deceived by wording that possibly exceeded the 10-word limit, the Court rejected the challenge as a "hair-splitting technicality." *Bonner*, 59 Mont. at 87, 195 P. at 848. Importantly, the Court excluded *actual* words from consideration in calculating the word limit because those words were required to be in the title. Thus, the Court held that "[t]he words

---

[5] LR-111 (1993), LR-115 (2000), and LR-116 (2000), each included every amended and repealed section in their titles and thus arguably exceeded the 100-word limit.

13

'For Initiative Measure No. 19,' and 'Against Initiative Measure No. 19,' are properly excluded from computation of the number of words in the legend on the ballot . . . ." *Bonner*, 59 Mont. at 87, 195 P. at 848.

¶32   *Bonner* does not, as Petitioners and this Court maintain, stand for the proposition that numbers or statutory references are to be counted as words. Opinion, ¶ 12. Indeed, the Court in *Bonner* specifically rejected a mechanical application of a statute similar to § 5-4-102, MCA, and never directly addressed whether numbers count as words. More significantly, however, the ballot issue considered in *Bonner* was a citizen-proposed initiative, not a referendum. We have recognized that ballot titles of referenda are entitled to more deference than ballot statements of initiatives. In *Harper*, 234 Mont. at 265, 763 P. 2d at 654, we stated:

> Because we find that the legislative referendum is a product of the Legislature and is passed in the form of a bill, its title should be examined according to the same standard applied to other legislation. If it results in greater deference being given to the ballot language which derives from the legislation rather than the petition, then that is appropriate due to the differences between the two sources.

*Bonner* therefore is not controlling authority for the Court's determination that statutory section numbers count as "words." Moreover, if a ballot initiative which arguably violates a word count was upheld, as it was in *Bonner*, then the deference to be accorded legislation, in the absence of authority to the contrary, warrants upholding the validity of LR-127's title.

¶33   The Court further overlooks long-standing authority that "the title *shall* refer to the statute to be amended, with sufficient particularity to identify it." *State v. Duncan*, 74 Mont. 428, 436, 240 P. 978, 980 (1925) (emphasis added). We explained in *Duncan* "the authorities agree generally that all difficulties are avoided if the title of the amendatory Act gives the number of the section to be amended and indicates its subject matter." *Duncan*, 74 Mont. at 436-37, 240 P. at 980. "'All that is *required* in such case is a reasonable degree of certainty as

14

to the statute to be amended.'" *Duncan*, 74 Mont. at 437, 240 P. at 980 (quoting *In re White*, 33 Neb. 812, 51 N.W. 287 (1892)) (emphasis added). *Duncan* accords with the well-recognized principle that the title of an amendatory act must identify "with reasonable certainty" the statute or section to be amended. Norman Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* vol. 1A, § 22:9, 277 (7th ed., Thomson 2009). Our caselaw reflects that an amendatory act "has a sufficient title, under a constitutional provision like ours, if it cite[s] the number of the section and the chapter of the Code to be amended and affected thereby." *State v. Courtney*, 27 Mont. 378, 385, 71 P. 308, 310 (1903); s*ee also State v. Silver Bow Ref. Co.*, 78 Mont. 1, 16-18, 252 P. 301, 305 (1926). Conversely, we have invalidated laws where the title did not give sufficient notice of an amendment to existing law made in the body of the bill. *Coolidge v. Meagher*, 100 Mont. 172, 182-83, 46 P.2d 684, 687 (1935).

¶34     The overriding inquiry is whether the title fairly apprises the reader of the subject of the legislation and the law being amended, or whether the title is misleading. *State ex rel. Bray v. Long*, 21 Mont. 26, 28-31, 52 P. 645, 646-47 (1898), *overruled on other grounds Palatine Ins. Co. v. N. Pac. Ry.*, 34 Mont. 268, 85 P. 1032 (1906). The Court concludes that the title of LR-127 is "complicated and confusing," Opinion ¶ 20, yet it has failed to explain how the inclusion of the statutory references will mislead or confuse voters. As we recently noted, the ballot language must "identify the measure on the ballot so that a Montana voter, drawing on both official and unofficial sources of information and education, will [be able to] exercise his or her political judgment." *MEA-MFT v. State*, 2014 MT 33, ¶ 11, 374 Mont. 1, ___ P.3d ___ (quoting *Harper*, 234 Mont. at 269, 763 P.2d at 657). The bill title supplied by the Legislature is not the only source of information explaining a ballot measure. The ballot also includes the Attorney General's explanatory statement, which is the official ballot title (*see*

15

§§ 13-27-312, -315, MCA), and the statements of implication. In light of our authority requiring an amendatory act to give notice of the statutes it is amending, the title supplied by the Legislature, together with the Attorney General's ballot statement, fairly apprises the voters of the proposed legislation and is not misleading.

¶35 Indeed, SB 256 from the 1979 Legislative Session, which enacted the 100-word requirement, included citations to all of the amended sections in its title. As we held in *Bonner*, when we excluded required language from the word count, these section references in LR-127 were mandated by *Duncan* and thus similarly should be excluded from the word count.

¶36 Contrary to the Court's conclusion today, I do not find that the plain meaning of the term "words" includes numbers or statutory references. *See* Opinion, ¶ 19. In holding that numbers count as words, the Court relies in part on authority from states which have specific statutes or rules addressing this issue. Opinion, ¶¶ 15-16. The Court reaches, and in my opinion errs, in citing authority from other states which have statutes or rules directing how numbers are to be considered. Statutory references are citations and, absent an indication from the Legislature to the contrary, should be construed consistent with our precedent. We have not, as demonstrated by the foregoing discussion, previously equated citations with words. The Court's determination obscures a very important distinction present here—the absence of any direction from our Legislature that statutory references are to be considered words. When a statute is equally susceptible to two interpretations, the one in favor of the peoples' rights—such as the right the people of Montana have reserved to themselves to adopt laws by initiatives and referenda—should be adopted. *See* § 1-2-104, MCA. Accordingly, § 5-4-102, MCA, is reasonably susceptible to an interpretation that would exclude the list of affected statutes from the word count.

16

¶37 Finally, if Petitioners' arguments were accepted, Montanans would be unable to vote on any issue, no matter how simple, that would require minor technical amendments to many sections of code. Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it. *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. It is likewise plausible that, had LR-127 not included all affected statutes, a challenge would have been made pursuant to *Duncan*. Such a lose-lose situation leads to absurd results and is inconsistent with the right of Montana voters to consider matters referred by the Legislature. *Letasky*, ¶ 11.

¶38 I dissent from the Court's decision which accepts Petitioners' argument that LR-127 is invalid on grounds that its title contains more than 100 words. In my view, our decision is in conflict with the following authority: the deference to be accorded to the Legislature in constructing the title to a referendum, *Harper*, 234 Mont. at 165, 763 P.2d at 654; the requirement that statutory sections be included in a referendum title, *Duncan*, 74 Mont. at 428, 240 P. at 980; precedent that establishes that required language be excluded from the word count, *Bonner*, 59 Mont. at 87, 195 P. at 848; the preference in favor of a natural right, § 1-2-104, MCA; and the absence of authority supporting a conclusion that a number or citation should be considered a "word." I would allow LR-127 to be on the ballot, thus enabling Montanans to accomplish the goals of popular sovereignty and self-government by voting on an important issue referred by the Legislature. To deny the right to vote on LR-127 because we have decided that numbers are words is in conflict with these principles and precedent. I dissent from the Court's decision to the contrary.

¶39 The Court does not address Petitioners' remaining contentions because of its resolution of the word-count challenge. As I have determined that § 5-4-102, MCA, does not render LR-127 invalid, I will address Petitioners' remaining contentions.

¶40 Petitioners contend that the Attorney General's legal sufficiency determination is incorrect because LR-127 encompasses more than one subject, in violation of Article V, Section 11(3), of the Montana Constitution. According to Petitioners, LR-127 changes the election laws in at least two separate and substantial ways: it provides for an open primary election system, and it provides that the top two vote winners—and no other candidates—will advance to the general election, regardless of party affiliation. Additionally, according to Petitioners, LR-127 "essentially" eliminates the right of third parties to appear on the general election ballot while weakening all political parties by allowing only a "party preference" to be stated on the ballot.

¶41 "Consistent with its obligation to construe the statutes to promote, rather than to curtail, the people's right of direct democracy," this Court interprets the Attorney General's legal sufficiency review authority narrowly. *Montanans Opposed to I-166 v. Bullock*, 2012 MT 168, ¶ 13, 365 Mont. 520, 285 P.3d 435 (Baker, J., concurring); *see also MEA-MFT*, ¶ 11.

¶42 We have stated previously that the reasons "for this Court's intervention in the initiative process prior to an election are quite limited." *State ex rel. Mont. Citizens for Preservation of Citizens' Rights v. Waltermire*, 224 Mont. 273, 276, 729 P.2d 1283, 1285 (1986). We have assumed jurisdiction over pre-election challenges when the initiative was not properly submitted under the election laws, e.g., *State ex rel. Livingstone v. Murray*, 137 Mont. 557, 354 P.2d 552 (1960), and where the initiative was unconstitutional on its face, e.g., *State ex rel. Steen v. Murray*, 144 Mont. 61, 394 P.2d 761 (1964). Moreover, in *Waltermire* we specifically addressed whether an initiative was invalid because it presented more than one amendment in a single

18

ballot in violation of the single-subject rule embodied in Article XIV, Section 11, of the Montana Constitution. We determined that:

> Even if plaintiffs' view is correct, this type of multiplicity is not a proper basis for this Court's intervention in the initiative process prior to election. This challenge does not constitute the type of question of unconstitutionality on the face of the Initiative over which this Court has previously accepted pre-election jurisdiction. Neither is this a challenge of the propriety of submission of the Initiative to the voters. Without ruling upon the merits of the contention, we decline[ ] to consider the issue prior to election.

*Waltermire*, 224 Mont. at 277, 729 P.2d at 1285-86.

¶43 I would similarly decline to consider whether LR-127 violates the single-subject rule in violation of Article V, Section 11(3), of the Montana Constitution. I would not rule on the merits of Petitioners' contentions and would conclude only that the challenge is not a proper basis for this Court's intervention into the initiative process.

¶44 Finally, Petitioners contend that the Attorney General's ballot statement violates § 13-27-312, MCA, in that it is untruthful, misleading, and contradictory. Section 13-27-312(4), MCA, requires that a ballot statement

> must express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so as to create prejudice for or against the issue.

The ballot statement the Attorney General has approved for LR-127 is as follows:

> The 2013 Legislature submitted this proposal for a vote. LR-l27 generally amends election laws to provide that the two candidates who receive the most votes in certain primary elections for partisan offices will advance to the general election irrespective of political party affiliation. Candidates may state a political party preference that will appear on the ballot. LR-l27 does not amend the primary process for party precinct elections or presidential primary elections. LR-127 amends primary election balloting by requiring all races to appear on the same ballot. LR-127 also generally amends certain related procedures regarding vacancies, write-in candidates, withdrawal of candidates, recall petitions, election judges, filing deadlines,

19

certification of votes, ballot form and uniformity requirements, recounts, electioneering, election challenges, and contribution limitations.

¶45 Petitioners maintain that the Attorney General's ballot statement for LR-127 does not provide fair notice, and provides contradictory and misleading information. Petitioners argue that LR-127 tells voters the primary process for party precinct and presidential primary elections will not change, even though the process will change because the formerly separate, party-based primary ballots would be combined into one ballot. Petitioners also point out that the referendum only allows candidates to indicate a party preference, instead of a party affiliation, and that it imposes a new requirement, in order to have a vote count, that voters must indicate a party preference. Petitioners argue that the statement in the title that other subjects will be "generally amended" omits certain important changes to the law.

¶46 Section 13-27-312(2)(a), MCA, establishes a limit of 135 words for a statement of purpose and implication for a ballot issue. That limit dictates that the statement will provide only a general overview of the ballot issue, not a full listing of all of its possible effects.

¶47 "To foreclose the prospect of endless and subjective challenges," this Court upholds ballot statements that meet the basic statutory requirements. *Stop Over Spending Mont. v. State*, 2006 MT 178, ¶ 18, 333 Mont. 42, 139 P.3d 788. As long as the Attorney General's wording "fairly states to the voters what is proposed . . . discretion as to the choice of language . . . is entirely [the Attorney General's]." *State ex rel. Wenzel v. Murray*, 178 Mont. 441, 448, 585 P.2d 633, 637-38 (1978). In *Harper*, 234 Mont. at 269, 763 P.2d at 657, we rejected a challenge to referendum ballot statements even though "the language may not be the best conceivable statement."

¶48 Here, it is my opinion that the Attorney General's statement of purpose meets the requirements of § 13-27-312, MCA. Therefore, I would decline to intervene in the referendum

20

process on grounds that the Attorney General's ballot statement of purpose and implication does not comply with that statute.

¶49 For the reasons set forth above, I conclude that Petitioners' arguments regarding the Attorney General's legal sufficiency review have no merit.

/S/ LAURIE McKINNON